**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2009-NMCA-114

Filing Date: August 24, 2009

Docket No. 27,872

**RUTH ROYBAL, LILLIAN ROYBAL DURAN,
and JULIA ROYBAL MANZANARES,**

   **Plaintiffs-Appellants,**

**v.**

**MARGIE LUJAN DE LA FUENTE,**

   **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
James A. Hall, District Judge**

Law Offices of Christopher Carlsen
Christopher Carlsen
Santa Fe, NM

for Appellants

Ellington & Ellington, L.L.C.
Kathrin Kinzer-Ellington
Santa Fe, NM

for Appellee

**OPINION**

**ROBLES, Judge.**

{1}     Plaintiffs appeal a grant of summary judgment to Defendant, which determined that certain water rights were conveyed to Defendant by virtue of her deed even though there was no specific language in the deed granting those rights. We reverse. We note that Plaintiffs also moved for summary judgment but, for the reasons that follow, we decline to consider their motion at this juncture and remand so the district court can consider their arguments in light of the holdings in this Opinion.

1

## I.    BACKGROUND

**{2}**    The following facts are undisputed.  In 1979, Aaron (also spelled "Aron") Roybal and his wife, Veronica, divided a parcel of property into fifteen adjoining sections and conveyed a section to each of their children by warranty deed.  Plaintiffs are three of Aaron's children, who were each granted one of the parcels, including Ruth Roybal.  All of the deeds contain restrictive language, specifying that they could only be sold to the heirs of Aaron.  Specifically, each deed states that "[t]he [c]ondition of this deed is that this [l]ot can [n]ot be sold except to one of the [h]eirs of [Aaron] Roybal."

**{3}**    Each deed also contains handwritten language, granting the recipient a right to water from the well located on Lot 13, the lot conveyed to Ruth.  Entitlement to the well water is also confined to Aaron's heirs.  Specifically, with some variation, the deed states:

> [There is] a well [o]n [L]ot [N]o. 13 which belong[s] to Ruth.  The well belong[s] to all of the heirs[. A]ll can use the water with the condition that all have [to] fix[] the pump and get [it] to work.  One water right in the El Rancho Ditch [is] to be use[d] by every one of the heirs[.]

The deed to Ruth specifies that the owners of the various lots are entitled to the water from the well on her property.

**{4}**    Luciano Roybal, Aaron's son and one of the original grantees, conveyed his portion, Lot 15, to his daughter, Bernadette Lujan.  Her deed also contains language limiting the sale of the land and the water rights to Aaron's heirs.  After some of the other land owner/grantees attempted to stop Bernadette from using the well, she filed a complaint for injunctive relief, *Lujan v. Roybal* (*Lujan* case), which was granted by the district court.  Later, she conveyed the parcel back to Luciano, his wife, and other relatives, who then deeded the property to Margie Lujan de la Fuente (Defendant). Defendant is not Aaron's heir.

**{5}**    The deed to Defendant contains only general language, describing the property and its location and then specifying that the conveyance is "[s]ubject to:  Reservations, restrictions, easements of record and taxes for the year 2004 and subsequent years."  It does not contain any express grant of a right to use the water from the well on Lot 13.  To the contrary, it contains no language whatsoever regarding water rights or the well on Lot 13.

**{6}**    Defendant's right to the well water became a source of contention, and Plaintiffs sued, seeking declaratory and injunctive relief to preclude Defendant from using the well water on Lot 13.  The parties submitted cross-motions for summary judgment.  Defendant claimed that Plaintiffs were barred from any relief under the doctrine of res judicata based on the *Lujan* case, the earlier lawsuit involving Bernadette.  She also claimed that she had water rights to Lot 13 because any restriction on the transfer of those rights was an

unenforceable restriction on alienation and, implicitly, because the water rights were appurtenant to the conveyance of land.

**{7}** Plaintiffs claimed that, based on the clear language of the earlier deeds, Defendant was not entitled to water rights because she is not Aaron's heir. They also claimed that the deed to Defendant failed to convey any water rights.

**{8}** The district court granted summary judgment to Defendant, declaring that she had a non-exclusive right to use the water from the well on Lot 13 "by virtue of the deed granting her Lot 15." This appeal followed.

## II.    STANDARD OF REVIEW

**{9}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. In ruling on a motion for summary judgment, "courts must resolve all reasonable inferences in favor of the nonmovant and must view the pleadings, affidavits, depositions, answers to interrogatories and admissions in a light most favorable to a trial on the merits." *Garcia-Montoya v. State Treasurer's Office*, 2001-NMSC-003, ¶ 7, 130 N.M. 25, 16 P.3d 1084. We review an award of summary judgment de novo. *Id.*

## III.   DISCUSSION

### A.    Water Rights by Appurtenancy

**{10}** As an initial matter, we note that the district court entered no findings or conclusions, and the transcript from the summary judgment hearing was not designated as part of the record. We also note that the undisputed facts set forth in Defendant's motion for summary judgment only concern the prior *Lujan* case, Defendant's prior payments for upkeep and use of the well, and the fact that Defendant is not Aaron's heir. Therefore, the district court's reasoning in granting summary judgment is not entirely clear, except to the extent it can be discerned from the statement that judgment is "by virtue of the deed granting her Lot 15." That language indicates that the district court determined that Defendant was entitled to the water from the well on Lot 13 based on her deed, even though the deed makes no mention of water rights or the well on Lot 13. This was in error.

**{11}** New Mexico applies the prior appropriation doctrine. In the absence of an express grant of water rights, a conveyance will only include water rights if they are appurtenant to the land. *Walker v. United States*, 2007-NMSC-038, ¶¶ 21-22, 142 N.M. 45, 162 P.3d 882 (noting that the central feature of the prior appropriation doctrine as it relates to appurtenancy is the separate and distinct nature of ownership of a water right from ownership of land and stating that "a water right is not an automatic stick in the bundle of rights a landowner receives upon purchasing even a fee interest in land"); *Hydro Res. Corp.*

3

*v. Gray*, 2007-NMSC-061, ¶ 23, 143 N.M. 142, 173 P.3d 749 ("Water rights that are not appurtenant to land are separate items of property and must be separately conveyed.").

**{12}**    In *Walker*, our Supreme Court held that, with the exception of water used for irrigation, water rights are not appurtenant to the conveyance of land. 2007-NMSC-038, ¶ 23; *see Hydro Res. Corp.*, 2007-NMSC-061, ¶¶ 17-18 (recognizing that water rights will not automatically accompany a conveyance of land except for water rights, which are appurtenant to irrigated land). The holdings in *Walker* and *Hydro Resources Corp.*—Supreme Court decisions filed after the district court entered summary judgment in this matter—convince us that the failure of Defendant's deed to specifically convey water rights must result in reversal of the district court's conclusion that she has water rights "by virtue of [the deed]" and reversal of the order of summary judgment. *Hydro Res. Corp.*, 2007-NMSC-061, ¶¶ 23-24 (holding that "[o]nly appurtenant water rights [*i.e.*, irrigation rights] will be conveyed with land when the conveyance is silent on water rights"). Applying the holdings of *Walker* and *Hydro Resources Corp.* to this case requires us to conclude that, as Defendant's deed is silent as to water rights, these rights were not conveyed with the land. *Hydro Res. Corp.*, 2007-NMSC-061, ¶ 24.

**{13}**    In light of the dispositive effect of these two recent Supreme Court cases, we briefly discuss the underlying facts in *Walker* and *Hydro Resources Corp.* In *Walker*, the plaintiffs had grazing permits over federal lands. 2007-NMSC-038, ¶ 2. When the grazing permits were cancelled, the plaintiffs sued, contending that the revocation of the grazing permits "resulted in the loss of water, forage, and grazing rights" without just compensation. *Id.* ¶ 5 (internal quotation marks omitted). They argued that the water rights over the land were connected to their lease of the land and, therefore, revocation of the lease denied them access to their water rights. *Id.* ¶¶ 9-12, 32. Our Supreme Court disagreed and held that, even though the plaintiffs were no longer permitted to graze their cattle on the subject lands, they continued to have a vested water right appurtenant to those lands, which was not severed by the loss of the grazing permit. *Id.* ¶¶ 33-34.

**{14}**    In *Hydro Resources Corp.*, the plaintiff claimed water rights to be used in connection with certain mining claims. The plaintiff's predecessor-in-interest had leased the mining rights to the defendants' predecessor-in-interest. 2007-NMSC-061, ¶¶ 7-9, 12. The defendants' predecessor-in-interest dug a number of wells on the leased premises, thus establishing appropriation by beneficial use. *Id.* ¶¶ 4-6. The mining lease then expired and reverted to the plaintiffs' predecessor. *Id.* ¶ 7. The plaintiffs argued that the water rights also reverted because, as the water was necessary for the mining claims, they were appurtenant out of necessity and passed back automatically with the mining rights. *Id.* ¶ 13. The Supreme Court disagreed and reiterated that the "sole exception to the general rule that water rights are separate and distinct from the land is water used for irrigation." *Id.* ¶ 18 (citation omitted).

**{15}**    In urging this Court to affirm the order granting summary judgment, Defendant sets out provisions of the warranty deed conveying the property to Luciano and traces the history

4

of the subsequent conveyance to Bernadette—the outcome of the *Lujan* case—and the reconveyance to Luciano and others. She notes that there is nothing restricting water rights in the deed from Aaron to Luciano. From the lack of any restrictive language, she concludes that "[t]he deed clearly transfers . . . the right to use the water from the well on [L]ot 13" and argues that the language stating, "the well belong[s] to all of the heirs [and] all can use the water," is not a reservation of water rights in Aaron. Defendant then contends that, through her warranty deed, she acquired in fee simple all of the rights her predecessors-in-interest acquired through the deed from Aaron, and all of the rights her predecessors-in-interest acquired by virtue of the judgment in the *Lujan* case. She argues that these water rights survive despite their absence from her deed.

**{16}** In light of the clear holdings in *Walker* and *Hydro Resources Corp.*, we disagree. Regardless of what water rights were transferred to Luciano, it is clear that the deed to Defendant does not include any language conveying water rights to her. Furthermore, as more fully discussed in analyzing Defendant's arguments based on res judicata, she is not entitled to water rights by virtue of the judgment in the *Lujan* case.

**{17}** In urging affirmance despite the recent Supreme Court decisions, Defendant contends that the land was used for irrigation, and the use remains for irrigation because the water rights were never severed pursuant to statute. Plaintiffs vigorously dispute Defendant's contention about prior irrigation use. Even if Defendant is correct, the district court made no findings regarding irrigation and, at best, it is a factual inquiry that can be assessed on remand. *Cf. Garcia-Montoya,* 2001-NMSC-003, ¶ 7 (stating that summary judgment should be denied if there is even the slightest doubt regarding whether there are any outstanding issues of material fact).

**{18}** Defendant also continues to question whether irrigation is the only way in which a water right becomes appurtenant and suggests that rights could become appurtenant by virtue of a court order, declaring the water right was "imbedded in her deed" such as the order in the *Lujan* case, and an expression of the grantor's intent to transfer the water rights as set forth in Luciano's affidavit. We disagree for two reasons. First, as discussed in the analysis of Defendant's res judicata argument which follows, the district court's language that water rights were "imbedded in her deed" in the *Lujan* case was interpreting Bernadette's deed, which expressly included water rights. Moreover, the clear language in *Walker* corrects any suggestion from prior case law "that uses of water other than for irrigation purposes are appurtenant to land." 2007-NMSC-038, ¶ 42; *see Hydro Res. Corp.*, 2007-NMSC-061, ¶ 31 (stating that "a need for water rights does not establish ownership of those rights, just as it does not result in water rights becoming appurtenant to land").

**{19}** Finally, Defendant argues that the underlying facts in *Walker* and *Hydro Resources Corp.* are sufficiently distinguishable from the facts in this case to warrant affirmance of the district court's order granting summary judgment. She attempts to distinguish *Walker* and *Hydro Resources Corp.* because, in those cases, the grantor and the grantee or lessee of the land disputed the ownership of the water rights while, in this case, Defendant's water rights

are being challenged by "strangers to her chain of title." We fail to see how this distinction warrants a different result. Plaintiffs have the right to use the well and the water appurtenant to that well. The well is located on the lot owned by Ruth, and the complaint specifies that Defendant's use of the well is diminishing the flow of water and causing actual harm.

**{20}** Defendant also seeks to distinguish *Walker* and *Hydro Resources Corp.* because, in those cases, none of the claimed water rights existed before the permittees or lessees applied the water to beneficial use, or filed an application with the Office of the State Engineer to develop the wells while, in this case, the well was permitted in 1957 and specifically followed the land through various transfers which followed. Defendant has failed to explain how this distinction warrants a different result given that the water rights were specifically transferred in the earlier conveyances, but not in her deed.

**{21}** Lastly, Defendant argues that, in *Walker* and *Hydro Resources Corp.*, none of the losing parties had previously obtained a judgment, declaring that they had an enforceable water right. We understand this argument to reference Defendant's alternative argument that summary judgment should stand pursuant to the doctrine of res judicata. As discussed in the following section, we are unpersuaded by this argument.

## B.    Res Judicata

**{22}** Defendant contends that the doctrine of res judicata bars Plaintiffs' suit because the same issues were already decided in favor of Bernadette in the *Lujan* case. It does not appear that the district court relied on this doctrine in granting summary judgment to Defendant. However, to whatever extent the court may have relied on the doctrine of res judicata, it did so in error.

**{23}** "Claim preclusion, or res judicata, precludes a subsequent action involving the same claim or cause of action." *Bank of Santa Fe v. Marcy Plaza Assocs.*, 2002-NMCA-014, ¶ 13, 131 N.M. 537, 40 P.3d 442. In order to bar a lawsuit under the doctrine of res judicata, four elements must be met: "(1) identity of parties or privies, (2) identity of capacity or character of persons for or against whom the claim is made, (3) [the] same cause of action, and (4) [the] same subject matter." *Id.* (alteration in original) (citation omitted). The party seeking to bar the claim has "the burden of establishing res judicata," and we review de novo a district court's determination that res judicata bars a party's claim. *Anaya v. City of Albuquerque*, 1996-NMCA-092, ¶ 5, 122 N.M. 326, 924 P.2d 735.

**{24}** We first consider whether Defendant has established identity of parties or privies and identity of capacity. In the *Lujan* case, Bernadette and Harold Lujan filed the complaint seeking an injunction against eight defendants, including two of the Plaintiffs in this action, Lillian Roybal Duran and Julia Roybal Manzanares. We note that Ruth Roybal, the third plaintiff in this case, was not a party in the *Lujan* case, although she did testify in that matter. In her claim for injunctive relief, Bernadette sought, among other things, access to the water from the well located on Lot 13. Bernadette was a predecessor-in-interest to Defendant on

6

Lot 15 and reconveyed the lot to Luciano and others, who then conveyed it to Defendant. Therefore, we agree that Defendant is the successor-in-interest to Bernadette, one of the plaintiffs in the *Lujan* case.

**{25}** Assuming without deciding that there was sufficient similarity between the parties to satisfy the first and second elements of res judicata, Defendant's reliance on that doctrine still fails because the claim and subject matter in this case are not the same as the claim and subject matter litigated in the *Lujan* case. *See Bank of Santa Fe*, 2002-NMCA-014, ¶ 14 ("If the causes of action are different, res judicata is inapplicable."). In evaluating what constitutes the same claim for purposes of res judicata, we apply the transactional approach. *See Moffat v. Branch*, 2005-NMCA-103, ¶ 17, 138 N.M. 224, 118 P.3d 732. Under this approach, we consider three factors: "(1) the relatedness of the facts in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient unit for trial purposes; and (3) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Bank of Santa Fe*, 2002-NMCA-014, ¶ 16 (internal quotation marks omitted) (quoting *Anaya*, 1996-NMCA-092, ¶ 12).

**{26}** In this case, applying a transactional approach leads us to conclude that the requirements for the same claim or cause of action have not been met. The claim and subject matter in both cases may at first glance appear similar because in both cases the trial court is asked to determine whether the party owning Lot 15 is entitled to access to the well water on Lot 13. However, in terms of factual relatedness, the cases do not involve the same material facts because the deeds at issue and the parties' status are significantly different. In the *Lujan* case, it was not disputed that the plaintiff, Bernadette, was an heir of Aaron. Furthermore, the deed from Luciano to Bernadette includes express language granting access to the well water while, in this case, the deed is silent.

**{27}** In light of the language of Bernadette's deed and her status as Aaron's heir, the central issue in this case—whether Defendant was entitled to water rights, even though her deed contained no mention of such rights, and even though water rights were purportedly limited to heirs—was not at issue and was never litigated in the *Lujan* case. Therefore, while the result sought in both lawsuits appears similar, the underlying facts are different because the respective owners of Lot 15 do not share a common identity as heirs of Aaron, and their deeds are sufficiently dissimilar that different legal theories are invoked. Based upon the foregoing, Defendant has failed to establish the third and fourth elements required for res judicata. *See Silva v. State*, 106 N.M. 472, 474, 745 P.2d 380, 382 (1987) ("Where the ultimate facts necessary for the resolution of two suits are different, and the issues necessarily dispositive in the prior cause are different from those in the subsequent cause, the doctrine of *res judicata* is inapplicable.").

**C.      Unreasonable Restraint on Alienation**

**{28}** In order to grant summary judgment to Defendant, a non-heir, the district court had to conclude that the provision in the deed to Luciano restricting water rights to Aaron's heirs

7

was invalid and unenforceable as an unreasonable restraint on alienation, even though there is no language in the order so stating. Based upon our decision to reverse summary judgment due to the lack of language in Defendant's deed expressly granting water rights, we need not consider whether the restriction on the granting of water rights would have been enforceable if Luciano had attempted to expressly convey his water rights to Defendant in her deed. If Luciano or any of Aaron's heirs conveys his or her parcel to a non-heir and attempts to include an express conveyance of the water rights, the question of whether the restriction on water rights is enforceable can be considered at that time. However, given that Defendant's deed does not include water rights, we decline to consider whether the water rights restriction would have been enforceable if the deed had attempted to transfer the water rights to a non-heir by expressly conveying these rights. *See generally City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶ 18, 124 N.M. 640, 954 P.2d 72 (stating that appellate courts avoid giving advisory opinions).

## D. Need for Remand

**{29}** Although the parties raised the issue of whether the land was used for irrigation and whether the parties complied with the statutory permitting procedures in their summary judgment pleadings, it does not appear these issues were addressed at the summary judgment hearing. We note that Plaintiffs contend that there are no issues of fact precluding this Court from evaluating their motion for summary judgment as well as the district court's grant of summary judgment to Defendant. However, Defendant contends there are factual discrepancies concerning whether the land was formerly used for irrigation and concerning the proper file number assigned by the State Engineer to Lot 13. Given that the district court did not consider either of these issues, we are disinclined to consider Plaintiffs' summary judgment motion at this juncture and instead remand so that the district court can first rule on these matters. *See generally Garcia-Montoya,* 2001-NMSC-003, ¶ 7 (noting that "[i]f there is the slightest doubt as to the existence of material factual issues, summary judgment should be denied" (internal quotation marks and citation omitted)).

**{30}** In summary, it appears that the district court, not having the benefit of the Supreme Court's opinions in *Walker* and *Hydro Resources Corp.*, based its ruling on Defendant's mistaken interpretation of the law. At this juncture, the appropriate course is to allow the district court to consider whether either party has established a case for summary judgment and, if necessary, permit the parties to develop more fully the facts that are relevant to the legal analysis established in *Walker* and *Hydro Resources Corp. See Garcia-Montoya*, 2001-NMSC-003, ¶ 48 ("On appeal, when the trial court's grant of summary judgment is grounded upon an error of law, the case may be remanded so that the issues may be determined under the correct principles of law.") (quoting *Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 16, 123 N.M. 752, 945 P.2d 970).

## IV. CONCLUSION

**{31}** For the foregoing reasons, we reverse and remand to the district court for further proceedings.

**{32}    IT IS SO ORDERED.**

_____
                                    **ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for _Roybal v. De La Fuente_, No. 27,872**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-RM | Remand |

| **CP** | **CIVIL PROCEDURE** |
|---|---|
| CP-RJ | Res Judicata |
| CP-SJ | Summary Judgment |

| **NR** | **NATURAL RESOURCES** |
|---|---|
| NR-WL | Water Law |

| **PR** | **PROPERTY** |
|---|---|
| PR-DD | Deed |
| PR-RA | Restraints on Alienation |